UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARUYASU INDUSTRIES CO., LTD., | ) | Criminal No.   1:16-CR-64 |
| CURTIS-MARUYASU AMERICA, INC., | ) | |
| TADAO HIRADE, | ) | Violation:      15 U.S.C. § 1 |
| KAZUNORI KOBAYASHI, | ) | |
| SATORU MURAI, | ) | Hon. Susan J. Dlott (U.S.D.J.) |
| and | ) | |
| YOSHIHIRO SHIGEMATSU, | ) | Hon. Karen L. Litkovitz (U.S.M.J.) |
| | ) | |
| Defendants. | ) | |
| | ) | |

UNITED STATES' RESPONSE TO DEFENDANT MARUYASU INDUSTRIES CO., LTD.'S
MOTION TO DISMISS THE INDICTMENT FOR LACK OF PERSONAL JURISDICTION

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

STATEMENT ..................................................................................................................... 2

STANDARD ....................................................................................................................... 3

ARGUMENT ...................................................................................................................... 5

    I.    The Court Has Jurisdiction To Try the Defendant For the Charged Offense Regardless of the Minimum Contacts Test ......................................................................................... 5

    II.   Alternatively, Even Assuming *International Shoe* Applies, the Court Has Jurisdiction Over the Defendant ............................................................................................. 13

CONCLUSION .................................................................................................................. 18

CASES

*Air Products and Controls, Inc. v. Safetech International, Inc.*, 503 F. 3d 544 (6th Cir. 2007)..... 13, 14, 16

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...............................................................3, 4

*Bird v. Parsons*, 289 F.3d 865 (6th Cir. 2002)...........................................................................16

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985).............................................7, 11, 12, 13

*Carrier Corp. v. Outokumpu OYJ*, 673 F.3d 430 (6th Cir. 2012)..............................................14

*Commercial Mut. Accident Co. v. Davis*, 213 U.S. 245 (1909) ....................................................7

*Cont'l Baking Co. v. United States*, 281 F.2d 137 (6th Cir. 1960) ............................................13

*Degen v. United States*, 517 U.S. 820 (1996)...............................................................................6

*Fiswick v. United States*, 329 U.S. 211 (1946) ..........................................................................12

*Ford v. United States*, 273 U.S. 593(1927)................................................................................11

*Foucha v. Louisiana*, 504 U.S. 71 (1992)...................................................................................17

*Frisbie v. Collins*, 342 U.S. 519 (1952)........................................................................................5

*Gen. Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F. Supp. 656 (E.D. Mich. 1996).................. 14, 15

*Hamling v. United States*, 418 U.S. 87 (1974)..............................................................................4

*Hartford Fire Insurance Co. v. California*, 509 U.S. 764 (1993) .................................................9

*Hyde v. United States*, 225 U.S. 347 (1912) .........................................................................10, 11

*In re Sealed Case*, 832 F.2d 1268 (D.C. Cir. 1987)......................................................................9

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982) .....................7

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945).....................................................3, 6

*J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011).........................................................12

*Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 410 F. Supp. 2d 592 (E.D. Ky. 2006) ......................................................................................................................15

*Ker v. State of Illinois*, 119 U.S. 436 (1886).................................................................................5

*Marc Rich & Co. v. United States*, 707 F.2d 663 (2d Cir. 1983)................................................10

*Melea, Ltd. v. Jawer SA*, 511 F.3d 1060 (10th Cir. 2007) .........................................................15

*Neal v. Janssen*, 270 F.3d 328 (6th Cir. 2001)..............................................................................8

*Perry v. Kempton*, 864 F. Supp. 37 (S.D. Ohio 1994) .......................................................14, 16

*Pinkerton v. United States*, 328 U.S. 640 (1946) .......................................................................12

Pon v. United States, 168 F.2d 373 (1st Cir. 1948)………………………………………………4

*Rivard v. United States*, 375 F.2d 882 (5th Cir. 1967)........................................................10, 11

*Second Amendment Found. v. U.S. Conference* of Mayors, 274 F.3d 521 (D.C. Cir. 2001).....................15

*Textor v. Bd. of Regents of N. Illinois Univ.*, 711 F.2d 1387 (7th Cir. 1983) ............................15

*The Antelope*, 23 U.S. (10 Wheat.) 66 (1825)...........................................................................18

*Third Nat'l Bank in Nashville v. Wedge Group, Inc.*, 882 F.2d 1087 (1989) ............................15

*United States ex rel. Marcus v. Hess*, 317 U.S. 537 (1943)......................................................17

*United States v. A Parcel of Land with A Bldg. Located Thereon at 40 Moon Hill Rd., Northbridge, Mass.*, 884 F.2d 41 (1st Cir. 1989) ......................................................................................17, 18

*United States v. Al Kassar*, 660 F.3d 108 (2d Cir. 2011)..........................................................11

*United States v. Ali*, 557 F.3d 715 (6th Cir. 2009) ......................................................................4

*United States v. Ali*, 718 F.3d 929 (D.C. Cir. 2013) ............................................................6, 7, 9

*United States v. Alvarez-Machain*, 504 U.S. 655 (1992) .............................................................7

*United States v. Apple, Inc.*, 791 F.3d 290 (2d Cir. 2015) ........................................................16

*United States v. Bakri*, 2014 WL 1745659 (E.D. Tenn. 2014) ................................................. 6

*United States v. Bodmer*, 342 F. Supp. 2d 176 (S.D.N.Y. 2004) ............................................. 6

*United States v. Caceres*, 440 U.S. 741 (1979)....................................................................... 10

*United States v. Campbell*, 798 F. Supp. 2d 293 (D.D.C. 2011) .............................................. 8

*United States v. Christian*, 942 F.2d 363 (6th Cir. 1991) ....................................................... 12

*United States v. Chung Cheng Yeh*, 2013 WL 2146572 (N.D. Cal. May 15, 2013) ................... 6

*United States v. Covington*, 395 U.S. 57 (1969) ....................................................................... 4

*United States v. Craft*, 105 F.3d 1123 (6th Cir. 1997) ............................................................. 4

*United States v. Davis*, 905 F.2d 245 (9th Cir. 1990) .............................................................. 8

*United States v. Dentsply*, No. 99-005 (D. Del.)..................................................................... 17

*United States v. Hollinger*, 553 F.2d 535 (7th Cir. 1977) ...................................................... 10

*United States v. Klimavicius-Viloria*, 144 F.3d 1249 (9th Cir. 1998)...................................... 8

*United States v. Lawson*, 507 F.2d 433 (7th Cir. 1974) .......................................................... 10

United States v. Loalza-Vasquez, 735 F.2d 153 (5th Cir. 1984)……………………………………11

*United States v. Lussier*, 929 F.2d 25 (1st Cir. 1991). ......................................................... 5, 7

*United States v. Lyons*, 740 F.3d 702 (1st Cir. 2014) ............................................................. 10

*United States v. Marks*, 530 F.3d 799 (9th Cir. 2008) .............................................................. 5

*United States v. Martinez-Hidalgo*, 993 F.2d 1052 (3d Cir. 1993)........................................... 8

*United States v. MMR Corp. (LA)*, 907 F.2d 489 (5th Cir. 1990)............................................ 16

*United States v. Mohammad-Omar*, 323 Fed. Appx. 259 (4th Cir. 2009) .............................. 11

*United States v. Nippon Paper Indus. Co.*, 944 F. Supp. 55 (D. Mass. 1996) .......................... 9

*United States v. Nippon Paper Indus. Co.*, 109 F.3d 1 (1st Cir. 1997)……………………………....9

*United States v. Perez-Oviedo*, 281 F.3d 400 (3d Cir. 2002).................................................... 6

*United States v. Pope*, 613 F.3d 1255 (10th Cir. 2010) ............................................................ 4

*United States v. Reed*, 77 F.3d 139 (6th Cir. 1996) .................................................................. 3

*United States v. Rendon*, 354 F.3d 1320 (11th Cir. 2003) ........................................................ 5

*United States v. Scaife*, 749 F.2d 338 (6th Cir. 1984)............................................................. 12

*United States v. Short*, 671 F.2d 178 (6th Cir. 1982)............................................................... 3

*United States v. Smith*, 197 F.3d 225 (6th Cir. 1999) ............................................................. 12

*United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150 (1940) .............................................. 12

*United States v. Stein*, 435 F. Supp. 2d 330 (S.D.N.Y. 2006).................................................. 5

*United States v. Superior Growers Supply, Inc.*, 982 F.2d 173 (6th Cir. 1992)......................... 4

*United States v. Vaughn*, 722 F.3d 918 (7th Cir. 2013)............................................................ 4

*United States v. Yousef*, 327 F.3d 56 (2d Cir. 2003) ................................................................ 8

*Unspam Technologies, Inc. v. Chernuk*, 716 F.3d 322 (4th Cir. 2013) .................................... 15

*Voice Sys. Mktg Co. v. Appropriate Tech. Corp.*, 153 F.R.D. 117 (E.D. Mich. 1994) .............. 7

*Walden v. Fiore*, 134 S. Ct. 1115 (2014) .......................................................................... 11, 12

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. V.................................................................................................................. 4

U.S. Const. art. III, § 2, cl. 3 .................................................................................................. 7, 8

**STATUTES**

15 U.S.C. § 1 ....................................................................................................... 2, 16

15 U.S.C. § 22 ................................................................................................... 10, 14

15 U.S.C. § 4 ......................................................................................................... 17

**RULES**

Fed. R. Civ. P. 55 ..................................................................................................... 6

Fed. R. Crim. P. 12 .................................................................................................. 4

Fed. R. Crim. P. 4(c)(2) ........................................................................................ 14

Fed. R. Crim. P. 43 ................................................................................................... 6

Fed. R. Crim. P. 7 ............................................................................................... 3, 4

**OTHER AUTHORITIES**

*Antitrust Enforcement Guidelines for International Operations* ............................................ 10

Orfield's Criminal Procedure Under the Federal Rules    4

## INTRODUCTION

Maruyasu Industries Co., Ltd. (the Defendant) moves to dismiss the Indictment, claiming that no U.S. court can adjudicate the charge against it because it is a foreign company without sales in the United States. But the Defendant is charged with knowingly engaging in a conspiracy to fix prices, allocate customers, and rig bids for automotive steel tubes sold to purchasers in the United States and elsewhere. The conspiracy affected U.S. commerce and was carried out in the United States, including in this district. There is nothing inappropriate or unexpected, let alone fundamentally unfair, about trying in U.S. courts those who knowingly join such a conspiracy. A contrary ruling would be an invitation to corporations around the world to orchestrate price-fixing conspiracies that harm U.S. commerce and cheat U.S. customers, believing the United States was powerless to punish them so long as only their U.S. subsidiaries and other co-conspirators acted in the United States.

The Defendant's argument for dismissal, based on the minimum contacts test applicable to *civil* disputes and the Indictment's failure to allege purposeful availment, is wrong. A criminal prosecution does not need to meet the minimum contacts test, nor does an indictment need to allege the basis for in personam jurisdiction. The due process standard for criminal prosecutions is satisfied here because there is nothing fundamentally unfair about trying a Defendant, which waived summons and appeared before the Court, for a crime committed in and affecting the United States. And even assuming the civil standard applies, it is met because the Defendant has sufficient contacts through 1) joining the charged conspiracy, 2) its co-conspirators' committing foreseeable acts in the United States in furtherance of the conspiracy, and 3) its own executives, acting on its behalf, carrying out the conspiracy in the United States. Accordingly, the motion should be denied.

## STATEMENT[1]

On June 15, 2016, a federal grand jury in this district returned an indictment charging the Defendant, its wholly-owned U.S. subsidiary, and four executives employed by the Defendant or its subsidiary with participating in a conspiracy in restraint of interstate and foreign trade in violation of Section One of the Sherman Act, 15 U.S.C. § 1.  Indictment at ¶¶ 1–6, 12 (Dkt. No. 1).  The indictment alleged that the defendants and their co-conspirators "knowingly entered into and engaged" in the conspiracy, "agreeing to fix prices, allocate customers, and rig bids for automotive steel tubes sold in the United States and elsewhere." *Id.* at ¶ 12.  For "the purpose of forming and carrying out" the conspiracy, the Defendant and its co-conspirators participated in meetings in the United States; agreed at these meetings "on allocations of customers, as well as on bids, prices, and price adjustments to be submitted to customers in the United States and elsewhere"; and agreed  "not to compete for certain customers or for certain business for automotive steel tubes sold in the United States and elsewhere by not submitting prices or bids or by submitting collusive and noncompetitive prices or bids to customers in the United States and elsewhere." *Id.* at ¶ 14(a)–(c).  The evidence at trial will show that the Defendant's own executives, acting on its behalf in furtherance of the conspiracy: participated in some of these meetings in the United States; sent communications in furtherance of the conspiracy to the Defendant's wholly-owned U.S. subsidiary, Curtis-Maruyasu America, Inc.; and were involved in the management and implementation of the conspiratorial agreement in the United States.

On June 20, 2016, the Defendant waived service of summons (Dkt. No. 15).  On June 30, the Defendant was arraigned (Dkt. No. 42), pleaded not guilty (Dkt. No. 27), and filed an appearance bond (Dkt. No. 28).  On July 11, the Defendant joined in a motion for an agreed-

---

[1] The basis for denying this motion is straightforward.  Accordingly, the United States does not believe that oral argument is necessary but is prepared to present oral argument if the Court determines it will be beneficial.

upon protective order governing discovery provided by the United States.  (Dkt. No. 37).  On July 12, the Defendant participated in a status conference with the Court.  (Dkt. No. 43).  The Defendant has requested and received extensive discovery from the United States.  On August 22, the Defendant filed a motion claiming it is not subject to the jurisdiction of U.S. courts. (Dkt. No. 48).

**STANDARD**

"When a body of citizens, properly chosen and constituted as a grand jury, finds probable cause to believe that a crime has been committed within its jurisdiction, that finding is sufficient to require a trial. . . .  [T]he prosecution's evidence is tested at trial, not in a preliminary proceeding."  *United States v. Short*, 671 F.2d 178, 183 (6th Cir. 1982).  An indictment's allegations are not subject to factual dispute before the trial on the merits and must be accepted as true for purposes of a motion to dismiss.  *United States v. Reed*, 77 F.3d 139, 140 n.1 (6th Cir. 1996) (en banc).

An indictment need not allege the basis for in personam jurisdiction, nor facts that would satisfy the "minimum contacts" test enunciated in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945).  *See* Fed. R. Crim. P. 7(c) (stating the requirements for an indictment and nowhere requiring specific factual pleadings addressing personal jurisdiction).  "An indictment is constitutionally adequate 'if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 176 (6th Cir. 1992) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).  The Defendant's reliance on *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), Defendant Maruyasu Industries Co., Ltd.'s Memorandum of

3

Law in Support of Its Motion to Dismiss the Indictment for Lack of Personal Jurisdiction

(hereinafter "Mem.") at 11, is misplaced because *Twombly*'s "plausibility standard" for civil

complaints does not apply to criminal indictments.  *United States v. Vaughn*, 722 F.3d 918, 926

(7th Cir. 2013).  While a civil plaintiff's conclusory allegations of conspiracy are, without more,

insufficient to state a plausible claim for relief, *Twombly*, 550 U.S. at 556–57, the allegations in a

criminal indictment are supported by the grand jury's probable cause finding based on its review

of the evidence, U.S. Const. amend. V; Fed. R. Crim. P. 7(a)(1).

To the extent the Defendant believes the factual issues related to its role in the conspiracy

or the actions of its executives are properly resolved before trial through affidavits or an

evidentiary hearing, it is mistaken.  A defense can be properly raised before trial pursuant to

Federal Rule of Criminal Procedure 12 only "if trial of the facts surrounding the commission of

the alleged offense would be of no assistance in determining the validity of the defense."  *United

States v. Ali*, 557 F.3d 715, 719 (6th Cir. 2009) (quoting *United States v. Covington*, 395 U.S. 57,

60 (1969); *see also* Fed. R. Crim. P. 12(b)(1) ("A party may raise by pretrial motion any defense,

objection, or request that the court can determine without a trial on the merits.").[2]  However

relevant the Defendant's role and its executives' actions in furtherance of the charged conspiracy

are to the pending motion to dismiss, they will be part of the United States' proof of the charged

offense.  Therefore, assessing them is solely within the "province of the ultimate factfinder," that

is, the jury at a trial on the merits.  *United States v. Craft*, 105 F.3d 1123, 1126 (6th Cir. 1997);

*see also United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) ("If contested facts

---

[2] The Defendant filed this motion pursuant to Federal Rule of Criminal Procedure 12(b)(2), but that rule does not authorize this motion.  Federal Rule of Criminal Procedure 12(b)(2) permits a party to move to dismiss the indictment for lack of subject matter jurisdiction, not personal jurisdiction.  *Pon v. United States*, 168 F.2d 373, 374 (1st Cir. 1948) ("The 'lack of jurisdiction' referred to in this part of [Rule 12(b)(2)] obviously refers to jurisdiction over the subject matter . . . ."); Orfield's Criminal Procedure Under the Federal Rules § 12:102 ("The words 'lack of jurisdiction' in Rule 12(b)(2) refer to jurisdiction of the subject matter.").

surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial.").

**ARGUMENT**

**I.    The Court Has Jurisdiction To Try the Defendant For the Charged Offense Regardless of the Minimum Contacts Test**

In a criminal prosecution, the Due Process Clause "is satisfied when one present in court is convicted of [a] crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional safeguards." *Frisbie v. Collins*, 342 U.S. 519, 522 (1952); *Ker v. Illinois*, 119 U.S. 436, 440 (1886). Nothing more is required. *Frisbie*, 342 U.S. at 522; *Ker*, 119 U.S. at 440. And thus a "federal district court has personal jurisdiction to try any defendant brought before it on federal indictment charging violation of federal law." *United States v. Rendon*, 354 F.3d 1320, 1326 (11th Cir. 2003); *see also United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008); *United States v. Lussier*, 929 F.2d 25, 27 (1st Cir. 1991).

The grand jury returned the Indictment charging the Defendant and its co-conspirators with conspiring to suppress and eliminate competition by agreeing to fix prices, allocate customers, and rig bids for automotive steel tubes sold in the United States and elsewhere. Indictment (Dkt. No. 1). The Defendant is present in this Court on that Indictment. The Defendant waived service of summons (Dkt. No. 15), was arraigned (Dkt. No. 42), pleaded not guilty (Dkt. No. 27), filed an appearance bond (Dkt. No. 28), participated in a status conference with the Court (Dkt. No. 43), joined in a motion for a protective order governing discovery provided by the United States (Dkt. No. 37), and requested and received discovery from the United States.

To the extent that the Defendant believes it is not here because it has invoked the words "special appearance," it is mistaken. *See United States v. Stein*, 435 F. Supp. 2d 330, 378 n.235

(S.D.N.Y. 2006) (noting that even if a Defendant makes a special appearance, "any action before the court beyond challenging the exercise of jurisdiction constitutes a general appearance" and that while the "Federal Rules of Civil Procedure . . . abolish[] the distinction between general and special appearances and permit[] a defendant to preserve a personal jurisdiction objection by answer or timely motion to dismiss" those "rules, however, do not apply in a criminal case"). The Defendant points to no *criminal* case in which a defendant actually filed a special appearance without leave of court as a means to challenge personal jurisdiction, and the United States can find none.[3]

The Defendant argues that the minimum contacts test for exercising personal jurisdiction over a foreign defendant in a civil action announced in *International Shoe*, 326 U.S. at 316, and developed in subsequent decisions adjudicating civil disputes, applies here. Mem. at 5–6. But this inquiry into personal "jurisdiction is reserved for civil cases—a *civil* defendant may avoid *civil* prosecution if the court lacks jurisdiction over her." *United States v. Bodmer*, 342 F. Supp. 2d 176, 187 (S.D.N.Y. 2004). The "issue of 'minimum contacts' does not arise in criminal cases," *id.* at 188, and these civil decisions are "simply inapposite." *United States v. Ali*, 718 F.3d 929, 944 (D.C. Cir. 2013); *see also United States v. Perez-Oviedo*, 281 F.3d 400, 403 (3d Cir. 2002).

---

[3] In addition, this novel procedure is in tension with the fugitive disentitlement doctrine, which typically precludes criminal defendants from filing motions seeking relief from a court at the same time the defendant purports to be beyond its reach. *See United States v. Bakri*, 2014 WL 1745659, at *5–6 (E.D. Tenn. 2014) (declining to reach merits on fugitive's motion); *United States v. Chung Cheng Yeh*, 2013 WL 2146572, at *2 (N.D. Cal. May 15, 2013) (same); *cf. Degen v. United States*, 517 U.S. 820, 824 (1996) (purposes of fugitive disentitlement doctrine include "encourag[ing] voluntary surrenders" and ensuring that a ruling is issued only if the defendant "is where he can be made to respond to any judgment we may render"). This doctrine is especially important in criminal cases in which courts cannot enter a default judgment in the event that a defendant attempts to absent herself from court after an unfavorable ruling. *Compare* Fed. R. Civ. P. 55 (describing procedure for entering default judgment against absent civil defendant) *with* Fed. R. Crim. P. 43 (requiring presence of criminal defendant at certain stages of prosecution).

The Supreme Court has made clear that the Due Process Clause does not impose identical requirements in the civil and criminal contexts.  In a civil action, a court cannot exercise personal jurisdiction over a party who "is induced by artifice or fraud to come within the jurisdiction." *Commercial Mut. Accident Co. v. Davis*, 213 U.S. 245, 256 (1909); *see also Voice Sys. Mktg. Co. v. Appropriate Tech. Corp.*, 153 F.R.D. 117, 119 (E.D. Mich. 1994) ("[W]here a person has been induced by trickery to come within the jurisdiction of a court for purposes of procuring service of process upon such person, the service will be set aside." (internal quotation marks omitted)).  But in a criminal prosecution, "[i]t is well settled" that the court has jurisdiction over the defendant "regardless of how his appearance was obtained."  *Lussier*, 929 F.2d at 27.  Even a defendant's "forcible abduction does not . . . prohibit his trial in a court in the United States for violations of the criminal laws of the United States."  *United States v. Alvarez-Machain*, 504 U.S. 655, 670 (1992).  For example, in *Ali* the court ruled that the Due Process Clause did not bar defendant's trial for a "crime committed by [a] foreign national[ ] in foreign locations against foreign interests," despite the fact that his presence was secured through an "elaborate ruse" by which he was invited to a sham conference in the United States, 718 F.3d at 933–35, 943–44.

Of course, that is not to say there are no constitutional limits.  The criminal venue clause requires that crimes "committed within any State" shall be tried "in the State where the said Crimes shall have been committed."  U.S. Const. art. III, § 2, cl. 3.  Its operation protects the same "individual liberty interest" that the "personal jurisdiction requirement recognizes and protects," *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)—defendants' interest in "fair warning" as to "where [their] conduct will and will not render them liable to suit," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).  Where, as here, the venue clause is satisfied, the Defendant has "fair warning" because the Defendant's

7

crime was effected in the state where the court sits. *Cf. Neal v. Janssen*, 270 F.3d 328, 331–32 (6th Cir. 2001) (a defendant can reasonably anticipate being haled into court in a state in which it commits a fraud, even if the defendant never enters the state). Here, the Indictment alleged that the charged crime was committed, at least in part, in the Southern District of Ohio. Indictment at ¶¶ 12, 14(a).

The venue clause does not require trial in the state where the crime was committed for crimes "not committed within any State," U.S. Const. art. III, § 2, cl. 3, and so some courts have permitted defendants to raise due process challenges to the prosecution of wholly foreign conduct by arguing that the prosecution is "fundamentally unfair" because the defendant could not have reasonably anticipated prosecution in the United States, *see, e.g.*, *United States v. Yousef*, 327 F.3d 56, 110–11 (2d Cir. 2003); *United States v. Martinez-Hidalgo*, 993 F.2d 1052, 1056 (3d Cir. 1993); *United States v. Davis*, 905 F.2d 245, 248 (9th Cir. 1990). In order to determine whether the prosecution is fundamentally unfair, some courts look for a nexus between the charged crime and the United States.[4] *Davis*, 905 F.2d at 249. This nexus requirement "serves the same purpose as the minimum contacts test in personal jurisdiction." *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1257 (9th Cir. 1998). But it does not involve a minimum contacts analysis. *See*, *e.g.*, *id.*; *Yousef*, 327 F.3d at 111–12. A defendant's burden when raising a fundamental fairness challenge is a "heavy one" for, as the D.C. Circuit

---

[4] Other courts conduct a more general inquiry than the nexus test to determine whether an extraterritorial prosecution is fundamentally unfair. *United States v. Campbell*, 798 F. Supp. 2d 293, 306 (D.D.C. 2011) (describing circuit split).

recently explained, "we have not found[]any case in which extraterritorial application of a federal criminal statute was actually deemed a due process violation."[5] *Ali*, 718 F.3d at 944 n.7.

The Defendant relies on *United States v. Nippon Paper Indus. Co.*, 944 F. Supp. 55, 59 (D. Mass. 1996), for its argument that the minimum contacts test applies equally in the civil and criminal contexts. Mem. at 5. But the district court dismissed the indictment in *Nippon Paper* believing the Sherman Act did not apply to "conspiratorial conduct in which none of the overt acts of the conspiracy take place in the United States." *Id.* at 66. The First Circuit corrected that error, holding that the defendants could be prosecuted for "wholly foreign conduct which has an intended and substantial effect in the United States." *United States v. Nippon Paper Indus. Co.*, 109 F.3d 1, 9 (1st Cir. 1997) (citing *Hartford Fire Insurance Co. v. California*, 509 U.S. 764, 796 (1993)). While the district court in *Nippon Paper* did apply the civil minimum contacts test, 944 F. Supp. at 60–62, there was no opportunity to correct that error because the district court concluded that it had general jurisdiction over the foreign company and thus did not dismiss on that basis. Indeed, the United States is unaware of any federal indictment being dismissed on the basis of the minimum contacts test.[6] Instead, contrary to the *Nippon Paper* district court's inconsequential error, U.S. courts recognize that they have jurisdiction to try defendants for federal offenses—including conspiracies like the one here that affected, or were carried out in

---

[5] The Sixth Circuit has not adopted a fundamental fairness or nexus requirement, and there is no reason to do so here because this case does not involve a crime wholly committed outside the United States and, in any event, it would easily pass muster under either test. *See infra* pp. 10–11.

[6] *In re Sealed Case*, 832 F.2d 1268, 1273–74 (D.C. Cir. 1987), cited by the Defendant, Mem. at 5, is inapposite because it addressed personal jurisdiction in the context of enforcement a grand jury subpoena sent during a grand jury investigation to a witness who was not charged with violating federal law. *Id.* at 1274. By contrast, this case involves personal jurisdiction over a defendant who has been charged with a violation of federal law by a grand jury.

part in, the United States—even when the defendants never entered the United States and
without considering the minimum contacts test.[7]  *See supra* pp. 7–8.

There is nothing fundamentally unfair about prosecuting the Defendant in the United
States for joining a conspiracy that was carried out in the United States and that affected
commerce in the United States.  U.S. courts have "jurisdiction to try an alien for a conspiracy to
commit a crime against the United States, formed without the United States, several of the overt
acts having been committed in furtherance of the conspiracy within the United States by a co-
conspirator."  *Rivard v. United States*, 375 F.2d 882, 886 (5th Cir. 1967); *see also*, *e.g.*, *United
States v. Lyons*, 740 F.3d 702, 718 (1st Cir. 2014) (holding convictions of agents of gambling
business based in foreign country not improper where at least one participant is in the United
States); *United States v. Lawson*, 507 F.2d 433, 445 (7th Cir. 1974) *overruled on other grounds
by United States v. Hollinger*, 553 F.2d 535 (7th Cir. 1977) ("It is well established that, in such a
situation, the federal district court has jurisdiction to try the defendant for conspiracy even
though he was corporeally outside the United States at all times during the alleged conspiracy.");
*Hyde v. United States*, 225 U.S. 347, 362–63 (1912) (explaining that all members of a conspiracy
may "be punished by an exercise of jurisdiction" in any state in which an overt act occurs).  This
rule applies equally to corporations.  *See Marc Rich & Co. v. United States*, 707 F.2d 663, 666
(2d Cir. 1983) (recognizing that "the United States could punish a foreign corporation for

---

[7] The Defendant's reliance on the Antitrust Enforcement Guidelines for International Operations, Mem. at
5, is also unavailing.  The guidelines' reference to *International Shoe*'s minimum contacts test comes in
the context of a discussion of the Department of Justice and the Federal Trade Commission "bring[ing]
suit" that specifically mentions Federal Rule of Civil Procedure 4, which addresses summons for *civil*
suits, and Section 12 of the Clayton Act, 15 U.S.C. 22, which prescribes where *civil* suits can be brought.
*Antitrust Enforcement Guidelines for International Operations,* § 4.1 at 30 & nn. 106–107.  Accordingly,
whatever guidance was provided on *International Shoe* there, it was intended only for civil enforcement.
In any event, that guidance cannot set the bounds of this Court's jurisdiction or be invoked to bind the
United States.  *United States v. Caceres*, 440 U.S. 741 (1979).

violating its criminal laws upon a" theory of constructive presence, which is established when the corporation joins "a conspiracy and at least one overt act of the conspiracy occurred within the United States"). Similarly, when a criminal conspiracy affects—or is even intended to affect—the United States, its members can rightly be tried in the United States. *See United States v. Al Kassar*, 660 F.3d 108, 118–19 (2d Cir. 2011); *United States v. Mohammad-Omar*, 323 Fed. App'x 259, 262 (4th Cir. 2009); *United States v. Loalza-Vasquez*, 735 F.2d 153, 156 (5th Cir. 1984). Indeed, "[t]he principle that a man, who outside of a country willfully puts in motion a force to take effect in it, is answerable at the place where the evil is done, is recognized in the criminal jurisprudence of all countries." *Ford v. United States*, 273 U.S. 593, 623 (1927) (internal quotation marks omitted).

Here, the grand jury found probable cause to believe that the Defendant knowingly joined a criminal conspiracy that was carried out in the United States and that affected U.S. commerce. Indictment at ¶¶ 2, 11–16. Co-conspirators of the Defendant were located in the United States. *Id.* at ¶¶ 1, 4, 6, 7. Victims of the conspiracy were in the United States. *Id.* at ¶¶ 11–15. Acts in furtherance of the conspiracy, including conspirators meeting at least seven times to carry out the conspiracy, occurred in the United States. *Id.* at ¶ 14. These allegations alone establish jurisdiction over all members of the conspiracy. *See Hyde*, 225 U.S. at 362–63; *Rivard*, 375 F.2d at 886.

The Defendant contends that considering the acts of its co-conspirators would be "inappropriate" because the "the Sixth Circuit has never adopted a co-conspirator theory of personal jurisdiction" and a plaintiff's acts, *Walden v. Fiore*, 134 S. Ct. 1115 (2014), or the "unilateral" acts of others, *Burger King,* 471 U.S. 462 (1985), do not qualify as minimum contacts. Mem. at 13–15. But neither the Sixth Circuit nor the Supreme Court—including in

11

*Walden*, *Burger King*, and *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011)—has ever held that the concerted actions of a conspiracy, that is, the foreseeable acts of a co-conspirator in furtherance of the conspiracy, cannot be considered against all those who knowingly join the conspiracy.  Quite to the contrary, the Supreme Court has long acknowledged the bedrock principle of criminal law that a conspiracy is "a partnership in crime; and an overt act of one partner may be the act of all."  *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 253–54 (1940) (internal quotation mark omitted).

Consistent with this principle, the Sixth Circuit has recognized that the acts of one member of a criminal conspiracy are attributed to all members, and thus one criminal defendant can be convicted for the separate substantive offenses committed by his co-conspirators that were foreseeable and in furtherance of the conspiracy.  *See United States v. Christian*, 942 F.2d 363, 367 (6th Cir. 1991) (citing *Pinkerton v. United States*, 328 U.S. 640, 646–47 (1946)).  And the Sixth Circuit has rejected a due process challenge to such convictions because the "foreseeability concept underlying *Pinkerton* is also the main concern underlying a possible due process violation."  *Christian*, 942 F.2d at 367–68.  Likewise, for purposes of the statute of limitations and venue, the act of one co-conspirator is effectively attributed to all the co-conspirators.  *See Fiswick v. United States*, 329 U.S. 211, 216 (1946) (statute of limitations runs for all co-conspirators from last overt act by any conspirator); *United States v. Smith*, 197 F.3d 225, 228 (6th Cir. 1999) (same); *United States v. Scaife*, 749 F.2d 338, 346 (6th Cir. 1984) (venue proper in district where overt act by any co-conspirator occurred even if defendant never entered district).  If a defendant's criminal conviction, venue for his trial, and the running of his statute of limitations can all be based on the separate acts of his co-conspirator, then there is nothing anomalous, let alone "inappropriate," Mem. at 15, about considering the acts of the

Defendants' co-conspirators in determining whether the Court has jurisdiction over the Defendant.

But even putting aside its co-conspirators' acts, the Defendant itself carried out the conspiracy in the United States when its executives, acting on its behalf, committed acts in furtherance of the conspiracy in the United States. *See Cont'l Baking Co. v. United States*, 281 F.2d 137, 149 (6th Cir. 1960). The evidence at trial will show that these executives: traveled as the Defendant's agents from Japan to participate in conspiratorial meetings in the United States; transmitted communications in furtherance of the conspiracy to the Defendant's wholly-owned U.S. subsidiary, Curtis-Maruyasu America, Inc.; and were involved in the management and implementation of the conspiratorial agreement in the United States. If the Defendant wishes to contest these facts, it can do so at trial, but because they are part of the United States' proof of the offense, it cannot litigate them before trial. *See supra* pp. 4–5.

## II. Alternatively, Even Assuming *International Shoe* Applies, the Court Has Jurisdiction Over the Defendant

In the alternative, assuming *arguendo* that *International Shoe*'s minimum contacts test applies, the Court has specific jurisdiction over the Defendant to adjudicate the conspiracy charge. The Defendant argues that it cannot have sufficient contacts with the United States to establish jurisdiction because it acts only outside the United States, but this argument is wrong as a matter of law and fact. The absence of physical contacts is no bar to personal jurisdiction. *Burger King*, 471 U.S. at 476; *Air Products and Controls, Inc. v. Safetech Int'l, Inc.*, 503 F. 3d 544, 551 (6th Cir. 2007). And the Defendant did in fact commit acts in the United States— through its own executives and through its co-conspirators, whose actions are properly deemed acts of the Defendant. *See supra* pp. 10–12.

Under *International Shoe*, the Court has specific jurisdiction over a defendant that has (1) purposefully availed itself of the privilege of acting in, or has caused a consequence in, the relevant forum, that is, the United States,[8] (2) the cause of action arises from the defendant's contacts with the United States, and (3) the acts and consequences create a substantial enough connection between the defendant and the United States to make the exercise of jurisdiction reasonable. *Carrier Corp. v. Outokumpu OYJ*, 673 F.3d 430, 450 (6th Cir. 2012). And where, as here, a defendant "intentionally aim[s]" its illegal conduct at the relevant forum and "the brunt of the harm" is felt there, the defendant's contacts are considered "enhance[d] . . . for purposes of a purposeful availment analysis." *Air Prods.*, 503 F.3d at 552–53 (internal quotation marks omitted).

Here, the Defendant "purposefully availed" itself of the United States by conspiring to restrain U.S. commerce by fixing prices, allocating customers, and rigging bids for automotive steel tubes sold in the United States. *See Perry v. Kempton*, 864 F. Supp. 37, 39 (S.D. Ohio 1994) ("Mr. Abramson purposefully availed himself of Ohio law when he allegedly conspired with Mr. Kempton and the Kempton group, both Ohio residents, to defraud the Plaintiff."); *Gen. Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F. Supp. 656, 663 (E.D. Mich. 1996) ("If the nonresident . . . committed a tort, or furthered a tortious scheme in the forum, even by way of phone call or written correspondence to the forum, personal jurisdiction is appropriate."). The Defendant knowingly joined a conspiracy that restrained commerce in the United States, harmed customers in the United States, and was carried out in the United States. Indictment at ¶ 11–16.

---

[8] In *Carrier Corp. v. Outokumpu OYJ*, the Sixth Circuit held that the relevant forum for civil claims under the Clayton Act for Sherman Act violations is the whole United States because Section 12 of the Clayton Act, 15 U.S.C. § 22, "authorizes service of process over an antitrust defendant 'wherever it may be found.'" 673 F.3d 430, 449 (6th Cir. 2012). Similarly, for criminal charges, including the Sherman Act charge here, Federal Rule of Criminal Procedure 4(c)(2) authorizes nationwide service of criminal summons, and, therefore, the relevant forum is the United States.

The Defendant's co-conspirators committed a multitude of foreseeable acts in the United States to advance the conspiracy.  *Id.* at ¶ 14.  "So long as any one co-conspirator commits at least one overt act in furtherance of the conspiracy in the forum jurisdiction, there is personal jurisdiction over all members of the conspiracy."  *Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 410 F. Supp. 2d 592, 599 (E.D. Ky. 2006).  Every court of appeals to decide this issue has deemed this conspiracy theory of jurisdiction consistent with due process, *Unspam Tech., Inc. v. Chernuk*, 716 F.3d 322, 329 (4th Cir. 2013); *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1069 (10th Cir. 2007); *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 523 (D.C. Cir. 2001); *Textor v. Bd. of Regents of N. Illinois Univ.*, 711 F.2d 1387, 1392 (7th Cir. 1983), as have several district courts within this circuit, *Kentucky Speedway*, 410 F. Supp. 2d at 599; *Gen. Motors Corp.*, 948 F. Supp. at 665.  And while the Sixth Circuit has not yet had occasion to pass on this issue in a civil context, as was explained above, the Sixth Circuit acknowledges that an act by one co-conspirator can be treated as an act of every co-conspirator consistent with the Due Process Clause.  *See supra* pp. 11–12.

What is more, the Defendant's own actions were directed at the United States.  The evidence at trial will show that its executives, acting on its behalf within the scope of their employment and in furtherance of the charged conspiracy, took actions in the United States, including participating in conspiratorial meetings.  *See supra* p. 13.  Moreover, the Defendant "was the 100% owner of" its subsidiary and co-conspirator in the relevant forum.  *Third Nat'l Bank in Nashville v. Wedge Group, Inc.*, 882 F.2d 1087, 1090 & n.1 (1989) ("[O]wnership of a subsidiary that conducts business in the forum is one contact or factor to be considered in assessing the existence or non-existence of the requisite minimum contacts." (internal quotation marks omitted)).

Second, this criminal prosecution arises from the Defendant's contacts with the United States—that is, the charge in the Indictment is "related to" the Defendant's contacts with the United States. *Air Prods.*, 503 F.3d at 553. Under this "'lenient standard,' . . . the cause of action need not 'formally' arise from defendant's contacts." *Id.* (quoting *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002)). Here, the cause of action does arise from the Defendant's contacts with the United States because those contacts are the joining, participating in, and carrying out of the charged conspiracy with co-conspirators located in the United States, which harmed victims in the United States. *Perry*, 864 F. Supp. at 39. The Defendant also claims that it could not have engaged in conspiratorial conduct in the United States because it does not sell its products here, Mem. at 16, but that argument misunderstands the Sherman Act's prohibition on engaging in price-fixing conspiracies. A defendant is a member of a price-fixing conspiracy and can be held to account for that membership, regardless of whether it sells the affected product, so long as it knowingly joins the conspiracy because "[e]very person who shall . . . engage in [a price-fixing] conspiracy . . . shall be deemed guilty of a felony." 15 U.S.C. § 1; *see also United States v. Apple, Inc.*, 791 F.3d 290, 320, 325 (2d Cir. 2015) (holding that Apple, by orchestrating a conspiracy among publishers to fix e-book prices, is no less liable than its publisher co-conspirators); *United States v. MMR Corp. (LA)*, 907 F.2d 489, 498 (5th Cir. 1990).

Finally, the exercise of jurisdiction over the Defendant is reasonable. Where "a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable," and "where, as here, the first two criterion are met, an inference of reasonableness arises and only the unusual case will not meet this third criteria." *Air Prods.*, 503 F.3d at 554 (internal quotation marks omitted). The Defendant claims to have

16

"balance[d] the interest of the United States, a plaintiff's interest in obtaining relief, and the burden on the defendant" and concluded that it is not only an inappropriate defendant, but wholly unnecessary to this proceeding.  Mem. at 17.  The Defendant misunderstands the nature of this proceeding and the purposes of criminal enforcement.

The Defendant stands accused of violating a U.S. criminal felony statute.  The purpose of criminal prosecution is to punish violators and to deter future felonious conduct by the Defendant and others who would engage in similar conduct.  *See Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (purpose of criminal sanctions is deterrence and retribution); *see also United States v. A Parcel of Land with A Bldg. Located Thereon at 40 Moon Hill Rd., Northbridge, Mass.*, 884 F.2d 41, 43 (1st Cir. 1989) ("The Supreme Court has frequently held that one important difference between criminal and civil penalties is that the former are primarily punitive or deterrent in their purpose—calculated to 'vindicate public justice,'—while civil penalties are primarily remedial and designed to 'protect the government from financial loss.'" (quoting *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 548–49 (1943)).  Deterrence of crime is not a "minimal interest" of the United States.  Mem. at 17.  And deterrence is served by punishing those who violate the law, thereby deterring future like conduct.  Thus, it is irrelevant that the "conduct at issue ended," Mem. at 17, because this is not a civil equitable action seeking prospective relief.[9]  And it is irrelevant that "other defendants would remain in the action," *id.*, because this is not a civil damages actions seeking compensatory damages that might be paid by some other culpable participant.  Nor is the possibility of prosecution "in Japan," Mem. at 18, a suitable substitute

---

[9] The United States can bring a civil suit to enforce of the antitrust laws through equitable relief "to prevent and restrain" ongoing or threatened violations, 15 U.S.C. § 4, as in *United States v. Dentsply*, No. 99-005 (D. Del.), the case cited by Defendant (Mem. at 17), or, as in the case here, it can bring criminal charges to punish ongoing or past offenses (subject to the criminal statute of limitations).

because "[t]he Courts of no country execute the penal laws of another." *The Antelope*, 23 U.S.

(10 Wheat.) 66, 123 (1825).[10]

## CONCLUSION

A grand jury found probable cause to believe that the Defendant conspired to violate U.S.

law, acted through its agents and co-conspirators in the United States to further that conspiracy,

and affected U.S. commerce.  It is properly prosecuted in this Court.  For the reasons set forth

herein, the United States respectfully requests that the Court deny the Defendant's Motion to

Dismiss the Indictment for Lack of Personal Jurisdiction.


DATED this 13th day of September, 2016.


Respectfully submitted,

United States of America

By:  /s/ *Jonathan A. Epstein*                    Co-Counsel:
       Jonathan A. Epstein                         Meagan D. Johnson
       Trial Attorney                              Michael N. Loterstein
                                                   Jesse L. Reising
Jonathan A. Epstein                                Trial Attorneys
Trial Attorney                                     U.S. Department of Justice
U.S. Department of Justice                         Antitrust Division
Antitrust Division                                 Chicago Office
Chicago Office                                     209 S. LaSalle, Suite 600
209 S. LaSalle, Suite 600                          Chicago, IL 60604
Chicago, IL 60604                                  Tel:  312-984-7200
Tel:  312-984-7200                                 Meagan.Johnson@usdoj.gov
Jonathan.Epstein@usdoj.gov                         Michael.Loterstein@usdoj.gov
                                                   Jesse.Reising@usdoj.gov

---

[10] The Defendant's attempt to balance its inconvenience in litigating in the United States based on the location of evidence and witnesses against the United States' need to enforce its criminal law to "vindicate public justice," *40 Moon Hill Rd.*, 884 F.2d at 43, deter crime, and protect U.S. commerce and consumers only serves to demonstrate how ill-suited the civil minimum contacts test is for criminal prosecutions.

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on September 13, 2016, I caused to be electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of

such filing to all parties by operation of the Court's electronic filing systems.


Dated: September 13, 2016              Respectfully submitted,

                    /s/ Jonathan A. Epstein
                    Jonathan Epstein
                    Meagan D. Johnson
                    Michael N. Loterstein
                    Jesse L. Reising
                    Trial Attorneys
                    U.S. Department of Justice, Antitrust Division
                    Chicago Office
                    209 S. LaSalle, Suite 600
                    Chicago, IL 60604
                    Tel:  312-984-7200
                    Email: jonathan.epstein@usdoj.gov
                              meagan.johnson@usdoj.gov
                              michael.loterstein@usdoj.gov
                              jesse.reising@usdoj.gov